IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER DAVID BROWN,
     Plaintiff,

vs.

                                     Case No. 04-3195-JTM

JOHN COMPTON, et al.,
     Defendants.

**MEMORANDUM AND ORDER**

Christopher David Brown, plaintiff, is an inmate in custody of the Secretary of Corrections of the State of Kansas. Brown is serving a sentence pursuant to convictions of murder in the first degree and aggravated robbery. While Brown was incarcerated at Hutchinson Correctional Facility ("HCF"), an encounter occurred between him and several prison officials resulting in the use of force against Brown. Pursuant to this encounter, Brown brought suit against various defendants in their individual and official capacities under 42 U.S.C. § 1983 (1996), alleging that his constitutional rights under the Eighth Amendment were violated. The State moved for summary judgment and for the following reasons, the motion for summary judgment is granted.

At the time in controversy, Brown was an inmate at HCF, but later filed suit while incarcerated at El Dorado Correctional Facility. On September 1, 2003, Brown threw a liquid which came into contact with the correctional officers Scoggin and Bode following a confrontation. It is disputed whether the liquid was water, or urine, as the State alleges. Brown was then moved to

another cell where he stayed until around 6:45 p.m. that same day, before he was taken to a different cell after he threatened suicide.

Around 11:00 p.m., Brown informed Master Sergeant Shook that he needed to go to the clinic because he was experiencing shortness of breath.  According to Brown he was naked in his cell "without running water, light, warmth, mattress, pillow, blanket, shower shoes, toilet paper or any other possessions in extremely cold temperatures" and was refused a suicide gown or glass of water pursuant to Captain Perry's orders, given after the day's events.  Dkt. No. 153-2, Ex. O-10 at ¶ 1, 2.  Brown hypothesized that his breathing problem may be attributable to the fact that he was cold.  Shook contacted the clinic and relayed to Brown that Nurse Tompkins reported he did not need to go to the clinic because he did not have a history of breathing problems.  Brown responded to Shook that he was having chest pains and after passing this information onto Nurse Tompkins, she agreed to see him in the clinic.

Believing the trip to the clinic unnecessary, Shook commented to Perry that Brown might use his freedom from his cell to cause a disruption.  Perry allowed Brown to go to the clinic, but gained the assistance of Lieutenant Foss and two response team members, Master Sergeant Harper and Sergeant Potter, in escorting Brown.  Brown adds that Sergeant Neumann was part of the escort.  At approximately 11:55 p.m., Brown was placed in handcuffs and belly chain restraints and taken to the clinic without his legs being shackled.

At the clinic, Nurse Tompkins performed an examination of Brown.  Tompkins later informed officers that there was nothing wrong with Brown and educated Brown on anxiety attacks, informing him that he should try to get some sleep.  At 12:20 a.m. on September 2, 2003, the officers were preparing to return Brown to the segregation unit.  Brown disputes that his restraints had to be

placed back on him, asserting that they were not removed during the examination. Regardless of this disputed fact, Brown was in restraints when the events giving rise to this suit unfolded.

At about 12:20 p.m., Brown was taken through the clinic waiting area back to the segregation unit which is where Brown's story diverges from the State's as to what transpired. Undisputed is the fact that there was a struggle between Brown, Perry, and Foss which resulted in Brown being subdued on the floor by the two. Harper, Potter, Neumann, and Corporal Compton were also present. When Nurse Tompkins heard the struggle, she was able to watch for a minute as Perry held Brown's head to one side and Foss put pressure on Brown's back to restrain him. Compton eventually asked Tompkins to go behind the security door inside the clinic. Perry then sprayed Brown with Oleoresin Capsicum ("OC") spray in his eyes in what was described as an effort to get Brown to calm down.

After Brown reportedly calmed, Neumann and Harper carried him into an isolation cell where he showered and decontaminated himself from the spray. Tompkins later rechecked Brown around 12:50 a.m. for injuries he might have sustained during the struggle. Tompkins reported that Brown told her " 'I'm all right'" and Tompkins noted that he, "[w]alks slowly as if uncomfortable . . . Abrasion noted to R elbow, cleansed with water, bandaid applied. Abrasions X4 to chest, abrasion to right upper inner arm, left elbow, left knee and right calf." Dkt. No. 110-6 at 7. She wrote in her progress report, "[L]inear pressure areas noted bilaterally to wrists from cuffs[.] No bleeding noted with exception of right elbow, bleeding there controlled[.] Cooperative with assessment." *Id.* She also stated that he refused a shower to wash his eyes. By 1:21 a.m., Brown returned to his cell.

Lieutenant Nelson of the Intelligence and Investigation division of HCF undertook an investigation into Brown's alleged battery on Officers Scoggin and Bode on September 1, as well

as the alleged use of force against Brown.  Nelson investigated the two uses of force in moving Brown between cells on September 1 and also the use of force on Brown in the waiting room clinic on September 2.  While investigating the incidences, Nelson had a conversation with Brown in which Brown invoked his rights to an attorney and no further questioning was conducted with Brown at that time.  Later, the battery charges against Brown were dropped, but Nelson proceeded with filing a report.  In her report, Nelson concluded, "[I]t still appears that they [Perry and Foss] used the minimum force necessary and that they successfully restrained a resisting and potentially suicidal inmate with virtually no injury to anyone involved, including the plaintiff."  Dkt. No. 110-4 at ¶ 16.

   Brown, representing himself, alleges in his complaint that Perry and Foss violated Brown's right to be free from cruel and unusual punishment under the Eighth Amendment when Perry threatened Brown, and the two later beat him while he was in constraints in the clinic waiting area. Brown further contends that he did not initiate the attacks, but the attacks were carried out against him with excessive force in retaliation for the urine he allegedly threw on the two correctional officers.  Brown also contends that the officers had a propensity for the use of excessive force, and the matter was not investigated properly.  The latter improper investigation claim appears to be directed at Nelson who investigated the case, as well as Bruce, who is also a defendant in the case and the warden of the HCF.   Additionally, Brown named Compton, Neumann, Harper, and Potter as defendants, apparently claiming that they failed to intervene when the alleged beating was administered.

   Brown first asked that each defendant be criminally charged, but he now concedes that he lacks standing to bring federal charges.  Brown further seeks a United States Department of Justice investigation into the HCF along with a permanent injunction barring the Kansas Department of

4

Corrections from future retaliation or harassment against him. Also, he requests that each defendant pay sums in excess of $20,000 for compensatory damages, $20,000 for punitive damages, $10,000 for statutory damages, and $30,000 for future medical and/or psychological expenses if found liable. In his complaint, Brown included a Fourteenth Amendment claim which appears to be only applicable, in so far as it applies the Eighth Amendment to the states to hold state prison officials liable for constitutional violations. On April 10, 2006, the State submitted a motion praying for summary judgment on all claims.

A Fed. R. Civ. P., Rule 56 motion for summary judgment requires that the moving party show beyond a reasonable doubt that summary judgment is appropriate and that there are no genuine issues of material fact. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The material facts in dispute are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment must show "specific facts" that demonstrate that a genuine issue needs to be resolved at trial without relying solely on "the mere allegations or denials of his pleading." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In consideration of the summary judgment motion, the court may view a "*Martinez* report" which is an administrative record prepared by the prison detailing its investigation into the events surrounding the issue. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The "*Martinez* report is treated like an affidavit, and *the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence.*" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (emphasis in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106,

1111 (10th Cir. 1991)).  When the plaintiff submits evidence sworn to under penalty of perjury it may also be treated as an affidavit.  *See id.*

The first issue to consider is Brown's claim against all defendants in their official capacities for which Brown seeks monetary damages.  As defendants note, suits brought against state officials in their official capacities under § 1983 are treated as if against the state and subject to the immunity enjoyed by that governmental entity.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Eleventh Amendment immunity bars suit in federal court against the state and "arms of the state."  *Duke v. Grady Mun. Schs.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted).  As far as Brown alleges monetary damages, and not prospective equitable relief, against the defendants in their official capacities, the defendants are immune from suit.  *See Meiners v. U. of Kan.*, 359 F.3d 1222, 1232-1233 (10th Cir. 2004).

In addition, Brown asserts a claim of injunctive relief against the Kansas Department of Corrections.  However, Brown has not named the Kansas Department of Corrections as a defendant to the suit to provide the state agency with a chance to defend itself.  This claim is also improper as against the named defendants employed at the HCF.

Brown then requests that the United States Department of Justice pursue an investigation into the defendants and the HCF.  But, summary judgment as a matter of law must be granted for the State on this claim as well, since the court could not grant this request.  *See Howard v. Rowland*, 1993 WL 255520 at *2 (N.D. Cal. 1993) (citing *FCC v. Pacifica Found.*, 438 U.S. 726, 735 (1978) (federal courts may not issue advisory opinions; a request for a federal investigation is tantamount to asking for an advisory opinion)); *see also Alley v. State*, No. 95-3010-MLB, 1997 WL 695590, at *1 (D. Kan. Oct. 15, 1997) ("This court lacks the jurisdiction or authority to order an executive

6

branch of the federal government to investigate a matter."). The federal court is not an appropriate channel for Brown to pursue this relief.

Moving on to the claims against the defendants in their individual capacities, the next issue to consider is Brown's excessive force claim against Perry and Foss. Defendants assert that they have qualified immunity from this claim. Qualified immunity is immunity from suit, not merely a defense, and to overcome summary judgement on these grounds, a plaintiff must satisfy a " 'heavy two-part burden.' " *Serna v. Colo. Dept. of Corrects.*, 455 F.3d 1146, 1150 (10th Cir. 2006) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). The plaintiff must first show that the defendant's actions violated a "'constitutional or statutory right,'" and second "that the right 'was clearly established at the time of the defendant's unlawful conduct.'" *Id.* (quoting *Medina*, 252 F.3d at 1128).

Whether Perry and Foss violated a constitutional right is determined by whether the use of force was excessive. A prison guard's use of force when "applied in a good faith effort to maintain or restore discipline" is constitutional, but violates the Eighth Amendment when it is applied "maliciously or sadistically for the very purpose of causing harm." *Id.* at 1300 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). Deference is also given to the prison in reviewing excessive force claims, and the case should not go to the jury, unless the evidence when "viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 1300-1301 (quoting *Whitley*, 475 U.S. at 322).

Prison officials have some latitude in dealing with prisoners, and a balancing test is used to consider if a use of force was excessive and was therefore a violation of constitutional rights. One factor to consider is the extent of the inmate's injuries. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Other factors may include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley*, 475 U.S. at 321). Also, the court may consider the reasonableness of the officer's belief, although mistaken, that more force than normal was needed to control a prisoner prone to fight back. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

In assessing Brown's complaint against Perry and Foss in their individual capacities, the court finds that the use of force implemented by the two was not implemented for the purpose of causing harm in a malicious or sadistic fashion. Under the factors expressed in *Hudson*, the officers' use of force was reasonable. Despite Brown's assertions that there are genuine issues of material fact, this court does not agree that a reasonable jury, in resolving the matter, could rule in his favor.

According to the affidavits of the officers present in the waiting room area when the use of force occurred, Perry and Foss were responding to Brown's disregard of orders requesting that he remain seated in the wheelchair. Brown became combative and was subdued on the floor by Perry and Foss. Nurse Tompkins attests that Brown was lying on his stomach with Perry at his head and Foss forcefully restricting his movement near his back. When Brown continued to struggle, Perry resorted to the use of OC spray to calm Brown and restore control over the inmate.

Brown contends that he was not being argumentative or resisting orders before or during the struggle. He contends that Perry informed him, in the clinic waiting area, that the real reason for the trip to the clinic was to: "KICK YOUR FUCKEN ASS!" Dkt. No. 153-2, Ex. O-10 at ¶ 8. Brown then describes being thrown from the wheelchair, choked, thrown to the ground, punched, stomped, kicked, and dragged across the floor. At one point during the struggle, Brown also states that he was

8

sprayed with an excessive amount of OC spray in his hair, eyes, and mouth, and that he cried out in pain from the attacks of Perry, Foss, and the other unknown assailants.   He finally alleges that Nurse Tompkins distorted the results of the  medical examinations to cover up the actions of the prison officers.

Brown's description of the facts does not present a genuine issue of disputed fact for several reasons.  Notably, the record reveals that Brown was disruptive earlier in the day, was potentially suicidal, possibly suffered from anxiety attacks, and initiated the trip to the clinic.  These events display that the struggle in the waiting room was a physical manifestation of Brown's unstable and restless mental condition at the time.   The conspiracies Brown alleged regarding Tompkins' involvement in a medical cover-up and Perry's plan to beat him in retaliation for throwing the liquid, may also be attributed to Brown's mental disposition.

Furthermore, this court rejects the claim that the use of mace constituted excessive force. The Seventh Circuit found that the use of chemical agents administered in nondangerous quantities by "responsible institutional personnel," does not rise to the level of excessive force.  *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).  The court also noted that other courts have upheld the use of chemical agents such as mace even when a prisoner is in handcuffs.  *Id.* (citations omitted). Similarly, other circuits allow small amounts of mace to be used in controlling defiant inmates.  *See e.g. Baldwin v. Stalder*, 137 F.3d 836, 841 (5th Cir. 1998); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000).

The record supports that the minimal amount of mace necessary to control the inmate was used.  The record indicates that although Brown was subdued on the floor, in restraints, and given repeated orders to stop struggling, he nevertheless persisted.   The mace was appropriately

administered in an effort to quash Brown's resistance.  Its effects were also *de minimis*, as Brown

initially refused showering to decontaminate and later, according to Nurse Tompkins, sought no

treatment for the pain.  Thus, the contention that the use of mace was excessive or should not have

been administered against an inmate in handcuffs and a belly chain, is not an issue that needs to be

resolved by a jury.

Medical evidence further discredits Brown's story, despite the fact that he suffered some

injury.  Evidence of physical injury to Brown was witnessed by Nurse Tompkins, Byron Benson

(Brown's mental health worker), and Brown's personal testimony.  Minor injuries were also testified

to by various prison officers.  Following the incident, Nurse Tompkins discovered numerous

abrasions to Brown's chest, right arm, left elbow, left knee, and right calf, but only the elbow was

bleeding.  There were also marks caused by the handcuffs on his wrists. On September 4, 2003,

Benson reported "cuts and bru[i]ses" on Brown after conducting a follow-up mental health

examination.  Dkt. No. 153-2, Ex. H.  Later medical records indicate that Brown continued to seek

care for these injuries.  Brown claims he relayed his injuries to Nurse Tompkins following the

encounter, but she reported differently that he said:   "I'm All Right."  Dkt. No. 110-6 at 7.

Disputes exist as to the validity of some facts.  But, when viewing the affidavits and other

relevant testimony, these disputes fall short of the burden necessary to overcome summary judgment

on the excessive force claim, even when viewed in a light most favorable to Brown.  It is apparent

that Brown suffered injuries, but his injuries are more indicative of a struggle to restrain a defiant

inmate, than a reflection of an attack involving "wantonness in the infliction of pain."  Balancing the

extent of Brown's injuries with the deference given to the prison in its need for Perry and Foss to

maintain control over a disruptive prisoner, reveals that the use of force was not excessive.

10

Following the use of force, the severity of its impact was tempered by the fact that Brown was allowed to shower and decontaminate and was examined by Nurse Tompkins. As a result, this court finds that the first prong of the *Serna* test is not satisfied because Brown has failed to meet the "heavy burden" of showing that Perry and Foss violated his constitutional right to be free from cruel and unusual punishment when they carried out the use of force. Summary judgment is appropriate on this claim, and the court need not proceed to the second prong of the *Serna* test.

Because this court grants summary judgment for the State's motion, finding that Perry and Foss did not exert excessive force, there is no need to review Brown's claims that Compton, Neumann, Harper, and Potter failed to intervene. Brown would need to show that there was an excessive use of force to establish this claim. *See Jackson v. Austin*, 241 F. Supp. 2d 1313, 1322 (D. Kan. 2003) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). Or, he would need to show that the prison official aware of the excessive risk to Brown's health or safety in the situation, disregarded that risk. *See id.* Brown has failed to show either case.

Similarly, Brown's claim that the defendants retaliated against him for throwing urine cannot proceed. Retaliation claims require that the inmate allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). Here, throwing urine or liquid was not a constitutionally protected right for which retaliation may be premised upon. It appears that Brown's claim, in this respect, is actually a reformulation of his excessive force claim which the court has already addressed.

The final claim to consider is Brown's improper investigation allegations against Nelson and Bruce. As respondents note, this claim could pertain to actions by the defendants either before or after the struggle. Whether before or after the struggle, the standard is one of deliberate indifference.

11

Brown asserts that the defendants failed to protect him by taking "reasonable measures" to remedy a situation posing a "substantial risk of *serious* harm" to him.  *See Lee v. Fed. Bureau Prisons*, 2001 WL 111226 at *5 (D. Kan. 2001) (internal quotation marks omitted) (emphasis added) (quoting *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995)).  However, plaintiff has not demonstrated the deliberate indifference standard because he has alleged conclusory allegations.  Moreover, plaintiff has not shown that he was at any risk of serious harm.  For this reason, plaintiff's claim with respect to improper investigation does not merit relief.

Brown's interrogatories revealed that Perry had been named in lawsuits by prison inmates more than once, and Brown also alleged that Perry's motive was retaliation for the earlier liquid-throwing incident.  However, this evidence is insufficient to support a finding that either Bruce or Nelson were aware that Brown faced harm and deliberately chose to disregard it.  The liquid-throwing incident occurred within hours of the struggle, and although the court is uncertain whether Nelson or Bruce were aware of the incident, there is no evidence outside Brown's allegations to support an inference of retaliation by prison guards.  It does not appear to be a risk that Nelson or Bruce knew of, but chose to disregard.  Bolstering the idea that Nelson and Bruce are not liable in this respect is the fact that the court does not find excessive force was used against Brown.  Since the actions of Perry and Foss did not amount to excessive force, it would be difficult to find that Brown faced a situation that posed a risk of harm, let alone a "substantial risk of *serious* harm." Absent a showing of deliberate indifference, this court cannot conclude that Nelson and Bruce are liable.

In review, this court finds that the State's motion for summary judgment on all claims is appropriate, thus, there is no need to discuss Brown's damages claims.  Summary judgment is

granted with respect to the claims against the defendants in their official capacities.  Brown's claims seeking injunctive relief against the Kansas Department of Corrections and asking for a federal investigation to be conducted by the United States Department of Justice, can also not withstand summary judgment.  Finally, summary judgment is granted with respect to a) Brown's excessive force claim against Perry and Foss; b) Brown's failure to intervene claim against Compton, Neumann, Harper, and Potter; c) Brown's retaliation claim against the officers; and d) Brown's improper investigation claim against Bruce and Nelson.

IT IS ACCORDINGLY ORDERED this 14th day of August, 2007, that the Motion for Summary Judgment of defendants Compton, et al. (Dkt. No. 110) is hereby GRANTED.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE